## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD M. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-113 (EGS) |
| | ) | |
| U.S. DEP'T OF JUSTICE *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| RICHARD M. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-384 (EGS) |
| | ) | |
| UNITED STATES *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Plaintiff Richard Harris filed a *pro se* complaint against several defendants, known and unknown, institutional and individual, federal, state, and private. He asserts claims for constitutional, statutory, and common law torts arising from an alleged widespread and long-running conspiracy to deter him from testifying before a grand jury and then later to retaliate against him for what some defendants believe — erroneously — was his cooperation with the government. Pending before the Court are three motions to dismiss and a motion for default

judgment. For the reasons stated, the motions to dismiss will be granted, the plaintiff's motion for default judgment will be denied, and the action dismissed.[1]

## I. Factual Background

Harris is currently incarcerated, serving a criminal sentence imposed by the Commonwealth of Pennsylvania. In 1998, while he was serving a prior criminal sentence for robbery imposed by the Commonwealth of Virginia, *see* Compl. ¶ 36, Harris

> informed prison authorities he had furnished the name of a potential "hit man" to the two defendants in a pending felony prosecution in the District of Columbia Superior Court— *United States v. Tommy Zurita and Farid Rashid* — who planned to kill the complaining witness in the case. After failing to persuade Harris to enter a cooperation agreement, the government called him as a witness to testify about the planned "hit" before a D.C. Superior Court grand jury on December 15, 1998. Harris appeared but refused to testify, invoking his privilege against self-incrimination under the Fifth Amendment to the United States Constitution. . . . [After securing an immunity grant for his testimony], [o]n January 21, 1999 Harris again appeared before a D.C. Superior Court grand jury and again refused to testify, invoking his Fifth Amendment privilege. He did the same before a district court grand jury on March 7, 2000.

---

[1] In April 2007, Harris filed a substantially similar action in the United States District Court for the Middle District of Pennsylvania. *See Harris v. United States et al.*, Civil Action No. 07-719 (M.D. Pa.). In that case, after the plaintiff had amended the complaint at the invitation of the court, an order was issued on June 27, 2007 transferring that action to this Court. The transfer did not occur timely, and this Court was unaware of the case filed in the Middle District of Pennsylvania when Harris filed this action here in January 2008. Eventually, after this Court learned of the prior case and the transfer order, the ordered transfer was effected, and the transferred case was opened here as Civil Action No. 09-384, related under Local Civil Rule 40.5(a)(3) to Civil Action 08-113. This case, Civil Action 08-113, filed in this Court in January 2008, arises from the same cause of action as did the case filed earlier in the Middle District of Pennsylvania. The defendants named in this case were named in the earlier case; the claims asserted in this case were asserted in the earlier case. Therefore, the case filed in the Middle District of Pennsylvania in April 2007 but only recently received by this Court will be subsumed into this action, and the complaint filed in January 2008, which is the most recently filed complaint arising from the events alleged, will be treated as the operative complaint. In sum, the disposition of Civil Action No. 08-113 governs the disposition of Civil Action 09-384, as well.

*U.S. v. Harris,* 314 F.3d 608, 609 (D.C. Cir. 2002). At a show cause hearing for contempt on May 4, 2000, Harris maintained that because of concern for his family's safety, he would continue to refuse to provide the sought-after grand jury testimony. *Id.* at 610.

Harris alleges that he was the victim of a wide-spread conspiracy, originally formed in or around May 1998 among his former friends — now defendants in this action — Tommy Zurita, Farid Rashid (the two defendants in the Superior Court felony prosecution), Derrick Kirby and Eddie Sullivan. Compl. ¶¶ 47, 48. The purpose of the conspiracy was first to "deter Harris by means of threats, intimidation, and violence, from testifying freely and truthfully before the grand juries of the D.C. Superior Court and the United States District Court for the District of Columbia . . . ." and thereafter to retaliate against him by physically harming him "for his having appeared before the above-mentioned grand juries." *Id.* ¶ 47. "On information and belief," the complaint alleges that "the conspiracy grew within a period of months" after May 1998 to include defendants Jack Kemp (former household employer of plaintiff's mother), Michelle Carter (the plaintiff's wife), Harry Sullivan, Jr. and Tracie Mitchell (plaintiff's former friends), Eugene Jones (plaintiff's former fellow inmate in Pennsylvania prison), Jensen Barber (plaintiff's court-appointed counsel for plaintiff's grand jury appearances), and two John Does, alleged to be CIA or DOJ officials. *Id.* ¶ 50. The complaint also states that Harris "refused to provide <u>any</u> testimony before the grand jury" because he was "seeking to protect [his wife] and the couple's three children from any possible retaliation," *id.* ¶ 45 (emphasis in the original).

After having refused to testify before the grand juries in 1998 and 1999, Harris was attacked and stabbed in October 2000 while housed in the D.C. Jail, an assault allegedly arranged by Carter, Kemp, Kirby, Mitchell, Rashid, Zurita, Rashid, Jones, Eddie Sullivan and John Doe 2,

acting through unnamed associates confined at the D.C. Jail. *Id.* ¶ 68. The attack was orchestrated to "both deter Harris from testifying before the grand jury and to retaliate for having even appeared before it." *Id.* ¶ 66. Then, in November 2006, the alleged conspirators "attempted to lure Harris' younger brother . . . into a location where they could kidnap and kill or otherwise harm him." *Id.* ¶ 69. Finally, in January 2007, Harris was attacked again, this time while incarcerated at a state prison facility in Pennsylvania. This second attack is also alleged to have been "arranged" by the alleged conspirators. *Id.* ¶ 106 (naming the same conspirators except leaving out Zurita).

Based on these events, and the theorized conspiracy,[2] the complaint alleges (*i*) a constitutional tort for violating his due process rights, (ii) a statutory tort under 42 U.S.C. § 1985(2) for conspiracy to intimidate the plaintiff with respect to his grand jury testimony, (iii) a common law tort of intentional infliction of emotional distress, and (iv) a common law tortious invasion of privacy against Alberto Gonzales, Kemp, Barber, Kirby, Carter, Mitchell, Zurita, Rashid, Jones, Eddie Sullivan and Harry Sullivan, Jr., two John Does and, presumably (as they are not named) the U.S. Department of Justice and the CIA. It alleges a violation of the Privacy Act against two John Does and (presumably) the CIA. It alleges a legal malpractice claim based on breach of attorney-client privilege and conflict of interest against plaintiff's court-appointed counsel, Barber. It also alleges a violation of the Eighth Amendment against officials and employees of the prison system for the Commonwealth of Pennsylvania for their roles in not adequately protecting the plaintiff from the attack on his person in January 2007. It also alleges

---

[2] Although the complaint cites 18 U.S.C. § 1503, because that is a criminal statute which can be charged only by the federal government, it is not discussed in this memorandum opinion.

that the prison personnel violated plaintiff's First Amendment rights by interfering with his access to the prison grievance process and, in turn, the courts.

Several defendants have never been properly served in this action. More than a year after filing the complaint, the plaintiff has not yet furnished an address for service with respect to defendants Zurita, Rashid, and Jones, or on Alberto Gonzales in his individual capacity. Compl. ¶¶ 11, 18, 19, 23. Therefore, service on those four individuals has never been attempted. Service has also never been attempted on the two John Does who the plaintiff has not yet identified by name or address. Service was attempted, but not accomplished, as to Jack Kemp, Tracie Mitchell, Harry Sullivan, Jr. and Eddie Sullivan. *See* Case Docket, "Summons Returned Unexecuted" (Feb. 29, 2008; May 2, 2008; Aug. 19, 2008; Sept. 22, 2008).

## II. Discussion

**A.       Barber's Motion to Dismiss**

Barber, who served as court-appointed counsel to Harris in connection with Harris' grand jury subpoenas, has filed a motion to dismiss, arguing that the complaint fails to state any claims against him upon which relief may be granted. Plaintiff has filed an opposition to Barber's motion.

A court may dismiss a complaint or any portion of it for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A court considering such a motion to dismiss must assume that all factual allegations are true, even if they are doubtful. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, - - , 127 S. Ct. 1955, 1965 (2007); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that a court must construe the complaint "liberally in the plaintiffs' favor" and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged"). A court need not, however, "accept inferences

drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must [a] court accept legal conclusions cast in the form of factual allegations." *Kowal,* 16 F.3d at 1276.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly,* 127 S. Ct. at 1964-65 (internal citations and quotations omitted) (alteration in original).  "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true . . . ." *Id.* at 1965 (citations and footnote omitted).  In deciding a motion brought under Rule 12(b)(6), a court is limited to considering "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao,* 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).  A court may take judicial notice of public records from other proceedings. *Covad Communications Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (permitting judicial notice of facts in public records of other proceedings).

The complaint alleges that "defendant Barber joined the conspiracy to deter Harris from testifying in connection with the federal investigation of the murder-for-hire plot," and that Barber "supplied the various other participants in the conspiracy with confidential and privileged attorney-client information concerning the investigation and the Government's efforts to secure Harris' cooperation and testimony." Compl. ¶ 65.  It offers no facts to support the allegations of a conspiracy involving Barber and does not identify any information that Barber provided to the other defendants.  Rather, it merely alleges in conclusory fashion that "Barber [and others] all carried-out various overt acts in furtherance of the objectives of the conspiracy . . . ." *Id.* ¶ 51.

As such, the allegations in the complaint against Barber are wholly conclusory and devoid of any factual support. For that reason alone, neither the federal nor the state law claims alleged against him can survive Barber's motion to dismiss.

The complaint asserts that Barber was a co-conspirator who participated in violating Harris's constitutional right to due process. The Fifth Amendment right to due process is a constraint upon the government, and because Barber did not act on behalf of any government, there can be no claim against him for a violation of a constitutional right. The complaint also alleges that Barber conspired with others to intimidate Harris as a grand jury witness in violation of 42 U.S.C. § 1985(2). But, the complaint offers not a single factual allegation to support a reasonable inference that Barber either participated in a conspiracy or did anything to intimidate Harris or in any way interfere with him freely testifying before the grand jury. Therefore, the complaint fails to state a claim against Barber under 42 U.S.C. § 1985(2).

The complaint alleges that Barber committed malpractice by not disclosing a conflict of interest and by violating Harris's attorney-client communications. Under the District of Columbia law, a claim for legal malpractice requires the plaintiff to

> allege facts which establish: (1) that [the attorney] had a duty to use such skill, prudence and diligence as other members of this profession commonly possess and exercise, (2) a breach of that duty, (3) a proximate causal connection between the negligent conduct and the resulting injury, and (4) actual loss or damage resulting from [the attorney's] negligence. . . . The test of the sufficiency of the claim in such a suit is whether its allegations, if proven, would state an actionable dispute.

*Mount v. Baron*, 154 F. Supp. 2d 3, 8 (D.D.C. 2001) (quotation marks and citation omitted). The facts alleged in this complaint, taken as true for purposes of this motion, establish only that Barber had at some time represented the brother of Rayful Edmond and did not advise the plaintiff of this fact. The complaint is devoid of any facts about Barber's representation of the

brother. It does not explain how that representation poses a conflict of interest with respect to representing Harris before the grand jury. It is further devoid of any facts alleging the harm that was proximate caused by this alleged conflict of interest. Moreover, while Harris broadly alleges that Barber breached the attorney client relationship, Harris does not identify a single privileged communication that was improperly divulged or single person to whom such a prohibited communication was made. Therefore, as to the malpractice claim, too, the statements in the complaint are mere legal conclusions based on speculation and cast in the form of factual allegations.

The common law claim against Barber for intentional infliction of emotional distress suffers from the same defect, that is, an absence of supporting facts. To state a claim for intentional infliction of emotional distress,

> a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress. . . . The conduct alleged must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Black v. Dist. of Columbia,* 466 F. Supp. 2d 177, 180 (D.D.C. 2006) (internal quotation marks and citations omitted). Although a prison assault in retaliation for providing information to the government may constitute conduct that is "outrageous," "extreme," and goes "beyond all bounds of decency," the complaint does not allege any facts that link Barber to either a conspiracy to or deeds in furtherance of either of the prison assaults. Rather, the complaint relies only on unspecified "information and belief" that Barber and several alleged co-conspirators working through unnamed others "orchestrated" the attacks on plaintiff. *See id.* ¶¶ 68, 106.

The complaint asserts a common law tort against Barber for "tortious invasion of privacy." The District of Columbia, relying on the Restatement (Second's) formulation of the

law, has long recognized a common law tort for invasion of privacy.  *Vassiliades v. Garfinckel's, Brooks Bros.,* 492 A.2d 580, 587 (D.C. 1985).  This formulation provides that "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."  *Id.* at 587 n.1.  "An invasion of privacy cause of action may be based on any of four theories:  1) intrusion upon one's physical solitude or seclusion; 2) public disclosure of private facts; 3) publicity that places someone in a false light in the public eye; and 4) appropriation of the name or likeness for another's benefit."  *Henderson v. MTV,* 2006 WL 1193872, *1 (D.D.C. May 3, 2006) (internal quotation marks, citations, and alterations in the original omitted).  Here, aside from the purely conclusory allegation that Barber improperly disclosed attorney-client confidences discussed above, there are no facts alleged to support a reasonable inference that Barber did anything, even in concert with others, to publicize a private matter.  Nor do the facts alleged in the complaint hint at what sort of invasion of privacy claim the plaintiff might have in mind with respect to Barber; the facts alleged do not describe either publicity or intrusion upon physical solitude.  In short, the complaint does not state a claim for invasion of privacy against Barber.

Even if Harris had stated, or could state, a common law tort claim against Barber, because all the federal claims and federal defendants in this action will be dismissed for reasons that will be explained below, this Court would decline supplemental jurisdiction of the common law claims alleged against Barber.  *See* 28 U.S.C. § 1367(c)(3).

**B.    The Federal Defendants' Motion to Dismiss**

The so-called "federal" defendants — the United States Department of Justice, the Central Intelligence Agency, Alberto Gonzales, the former United States Attorney General who

is named in both his official and individual capacities, and Jack Kemp, the former Secretary of Housing and Urban Development who is sued here only in his individual capacity, have filed a motion to dismiss. They argue that all the claims in the complaint fail for either lack of subject matter jurisdiction or failure to state a claim upon which relief may be granted. In addition, they contend that some claims are barred by the applicable statute of limitations, and that this Court lacks personal jurisdiction over Gonzales and Kemp who have never been properly served in this action.

The plaintiff has not responded to the federal defendants' motion. Local Civil Rule 7(b) permits a court to treat as conceded any dispositive motion as to which no response is timely filed. Local Civil Rule 7(b). In light of the fact that the plaintiff received written notice that dismissal could result from not responding to the federal defendants' dispositive motion, the motion will be treated as conceded and the federal defendants will be dismissed as defendants from this action.

**C.    The Commonwealth Defendants' Motion to Dismiss**

Six other defendants — C.O. Rakus, Gerald Gavin, William Wetzl, Mr. Kane, Edward Martin, and Jeffrey Beard — all of whom are or were employees of the Commonwealth of Pennsylvania, have also filed a motion to dismiss, arguing that the complaint failed to allege facts that would tend to establish this Court's personal jurisdiction over them. The plaintiff has not responded to the Commonwealth defendants' motion. Therefore, in accord with Local Civil Rule 7(b) and the written notice issued to the plaintiff, and without reaching the merits of the claims asserted against them, the Commonwealth defendants' motion to dismiss will be treated as conceded and these defendants will be dismissed from the action for lack of personal jurisdiction.

-10-

### E.     The Plaintiff's Motion for Default Judgment

The plaintiff has filed a motion for default judgment as to four defendants, Eddie Sullivan, Tracie Mitchell, Derrick Kirby, and plaintiff's wife Michelle Carter.  According to the docket in this case, Eddie Sullivan and Tracie Mitchell have never been served with the complaint and summons.  Therefore, no default judgment may be lodged against them.  *See* Fed. R. Civ. P. 55 (permitting a judgment by default only upon a party's default).  However, the record shows that Kirby and Carter were served with a summons and a copy of the complaint, but have not responded as required by the summons.

> Rule 55 allows a court to enter a default judgment where a party has defaulted.  However,
>
> [t]he law is clear ... [that a defendant's] failure to appear and the Clerk's subsequent entry of default against it do not automatically entitle plaintiff to a default judgment.  Indeed, a default is not an absolute confession by the defendant of his liability and of the plaintiff's right to recover, but is instead merely an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability.  . . . First, the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief.  . . .  In other words, a default judgment cannot stand on a complaint that fails to state a claim.

*Jackson v. Correctional Corp. of Am.*, 564 F. Supp. 2d 22, 26-27 (D.D.C. 2008) (internal quotation marks and citations omitted).  Thus, unless the complaint states a claim upon which relief may be granted as to the defendants who have defaulted, default judgment is not justified.

The complaint alleges four claims against Kirby and Carter:  a violation of the plaintiff's constitutional right to due process, a conspiracy to intimidate a witness in violation of 42 U.S.C. § 1985(2), and two common law tort claims.  The complaint fails to state a claim upon which relief may be granted with respect to all four claims against these two individuals for the same reasons discussed above in relation to defendant Barber.

Because the Fifth Amendment right to due process is a constraint upon the government, and because there are no factual allegations supporting an inference that either Kirby or Carter acted on behalf of a government to interfere with Harris's due process rights, the plaintiff cannot state a claim against them for a constitutional violation. The complaint includes no facts pled in support of the purely conclusory allegations that Kirby and Carter conspired with each other or others for the purpose of intimidating Harris as a grand jury witness in violation of 42 U.S.C. § 1985(2). Conclusory allegations devoid of facts cannot state a claim upon which relief may be granted, and cannot support a default judgment.

Also as to the common law claim for emotional distress, the complaint provides insufficient facts to state a claim upon which relief may be granted as to Kirby and Carter. It makes only conclusory allegations that Kirby and Carter conspired to intentionally to inflict emotional distress on the plaintiff. While the complaint does allege facts to establish that Carter engaged in sexual relations with Kirby and others while she was engaged to and married to Harris, there is no allegation that her infidelity caused the emotional distress of which Harris complains. Compl. ¶ 40. Rather, the complaint identifies the prison assaults as causing extreme emotional distress. *See id.* ¶ 68, 107. While a prison assault in retaliation for providing information to the government may constitute conduct that is "outrageous," "extreme," and goes "beyond all bounds of decency," *Black,* 466 F. Supp. 2d at 180, the complaint does not allege any facts that link Kirby or Carter to either a conspiracy to, or to deeds in furtherance of, either of the prison assaults. Rather, the complaint alleges that defendant Jones, plaintiff's fellow inmate, "put up" another inmate, Raymond Clark, to attack the plaintiff. Compl. ¶ 101. But, it turns out that Clark was not the January 2007 prison attacker; instead, Terrance Wells, one of Clark's friends attacked the plaintiff. *Id.* ¶ 105. At the most, the complaint alleges that Carter, but not

Kirby, was a friend of Clark's.  Other than that bald friend-of-a-friend allegation, the complaint relies solely on unspecified "information and belief" that Carter, Kirby and several others arranged the January 2007 prison attack on the plaintiff.  *See id.* ¶¶ 68, 106.  Such speculative assertions unsupported by facts cannot serve as the basis for a default judgment.

The complaint repeatedly alleges that Carter used her position as plaintiff's wife to gather information from him and relay it to the others in the alleged conspiracy.  *Id.* ¶¶ 56-59.  Plaintiff is mistaken if he thinks the conduct described in the complaint may be redressed by suit for invasion of privacy.  First, the complaint describes no public dissemination of the information.  Second, the complaint does not describe an invasion of privacy, but instead describes freely shared information based on misplaced trust.  Nothing in the complaint depicts an intrusion upon one's physical solitude or seclusion, a public disclosure of private facts, publicity that places someone in a false light in the public eye or appropriation of the name or likeness for another's benefit.  *See Henderson v. MTV,* 2006 WL 1193872, *1.  Accordingly, the allegations in the complaint do not state a claim for invasion of privacy that is recognized under the District of Columbia's common law.  Because the complaint fails to state a claim against Carter or Kirby, the plaintiff's motion for default judgment will be denied and those two defendants will be dismissed from this action.

F.      **Claims Against the Remaining Defendants**

Pursuant to the Court's obligation under 28 U.S.C. § 1915(e)(2)(B)(ii), which requires a court to dismiss a case when it has determined that it fails to state a claim upon which relief may be granted, the claims against the remaining defendants — Tracie Mitchell, Eugene Jones, Farid

Rashid, Tommy Zurita, Harry Sullivan, Jr., Eddie Sullivan,[3] and Alberto Gonzales in his individual capacity, none of whom have been properly served with a summons and complaint in this action — will also be dismissed. None of these defendants are answerable to the plaintiff for a violation of his Fifth Amendment, as the complaint does not allege any conduct by them in which they were acting on behalf of a government.[4] The complaint does not allege facts as to any of these individuals that rise above the level of speculation regarding a conspiracy among and between these particular defendants to intimidate a witness in violation of 42 U.S.C. § 1985(2). Similarly, the complaint fails to state any common law claims upon which relief may be granted because it relies on conclusions and speculation and does not contain sufficient facts. As to the emotional distress claim, at the most the complaint alleges that in early January 2007 Jones, but not the others, "threatened" the plaintiff. Compl. ¶ 99. Still, the complaint does not state the nature of the threat or allege facts that would support a reasonable inference that the threat itself was outrageous, extreme, or beyond all bounds of decency, as is required for the common law tort of intentional infliction of emotional distress. As to the invasion of privacy claim, the complaint offers nothing in the way of factual allegations to support such a claim against any of these individuals. Accordingly, the complaint fails to state a claim against these individuals upon which relief may be granted, and must be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[3] Eddie Sullivan is also dismissed pursuant to Fed. R. Civ. P. 4(m). *See* Order, July 24, 2008, allowing plaintiff until Sept. 10, 2008 to provide Eddie Sullivan's correct address or risk dismissal as to that defendant.

[4] While Gonzales acted on behalf of the government in his role as attorney general, he did not assume that position until February 3, 2005. The events relating to the grand jury testimony, which give rise to due process claim, occurred in 1998 - 2001, several years before Gonzales became attorney general. There are no facts alleged that link Gonzales in his individual capacity to anything related to the grand jury proceedings or plaintiff's appearances before the grand jury.

-15-

## III.  Conclusion

For the reasons stated, the pending motions to dismiss will be granted, the plaintiff's motion for default judgment will be denied, and this action will be dismissed in its entirety.  A final order accompanies this memorandum opinion.

                                                              /s/
Date:  March 5, 2009                          EMMET G. SULLIVAN
                                            United States District Judge